Good afternoon, Your Honors. Mark Moseley representing the plaintiffs and appellants, Tommy Dowdy and Sharon Morris Dowdy. I'd like to reserve three minutes. Am I right? I plan to talk about four topics that I believe where these are areas where I think I might be able to add some clarity to the briefing. I'm happy to be drawn off into other subjects, but I don't intend to cover everything, obviously. First, I want to touch on the burden of proof, and I think I can do that briefly. Second, I want to talk about the importance, the significance of standardized terms in coverage law. Third, I want to talk about what I call the causation problem that's not new to this case. It's been around for a hundred years. And finally, if there's time left, I'll talk about the McClure case, which I think everyone agrees is not applicable, but for different reasons, and is a problematic case if there's time. First, burden of proof. At the top of page 5 of the district court's decision, it made it clear it was putting the entire burden upon the plaintiffs to prove that there was coverage under the policy. The problem is that the district court's opinion turned very heavily on the first exclusion to the policy, the so-called physical and mental illness or infirmity exclusion. I don't understand how that works. If you have an exclusion which so completely overlap, then which one do you look at and why are we, I mean, you seem to be saying we shouldn't be looking at the, well, I guess we should be looking at the exclusion because that shifts the burden of proof to the defendant, but why? I mean, why aren't we first looking at the affirmative coverage? Well, I'm glad you asked that. I think the exclusion is more specific. The general insuring agreement is very general. And I think that the court, the district court recognized it and kept going back to the exclusion. So it's very clear that it was relying very heavily on the exclusion to deny coverage. And your argument is the exclusion would be the burden, the burden would be placed upon Medline? Yes. I think I can say with some confidence that this is the only reported decision I've ever seen in the last 50 years. You did say that you're willing to go off topic on your four topics. And so let me take you off topic and just ask you for your own reaction. The district court found that there was no evidence of bad faith. In fact, there are a number of acts on the part of the defendant which suggested the potential of bad faith, in particular the refusal to answer phone calls, the clear, the numbers of rejections every time they had an available objection to coverage, or they granted it. They also relied upon a reading of the provision, which is theoretically inconsistent with the Ninth Circuit precedent. That's McClure. They're taking literal language of the sole cause as opposed to substantially. And I wonder if that suggests that there may be a question of bad faith in the first place. And in the second place, are you waiving that argument, or do you agree that there's evidence of bad faith here on the part of the insurance company? Okay. I'm not really sure where that goes. Bad faith generally I think I'd aim at getting the extrinsic evidence in. That's where I was arguing it in the briefing is that's why I think it was an error to exclude the extrinsic evidence because the systematic evidence of bad faith of the insurer in, a plan beneficiary has a fiduciary duty to the plan, or the plan fiduciary, the administrator has a fiduciary duty to the plan beneficiary that is equivalent I think to the trust law. And the trustee's duty to the beneficiary is the highest fiduciary duty known to the law. You can't hide anything. You have to be completely forthcoming. And here they did just the opposite. They never aided this completely inexperienced woman in helping her find the medical records. They were only looking for what was, what they thought might give them an excuse to deny coverage. And then they had alternating excuses for denial of coverage. The first was that there hadn't been an amputation, even though they already knew they should already talk to somebody and told them that there had. Then they denied it orally because there were opiates found in the system that were the first responders. It wasn't any record. And then they also used the standard, which is not North, which is not Ninth Circuit law. But I guess the confusing part for me is where does that go? Let's say you've found that Medlife acted in bad faith. What does that lead to? Oh, I think that, I think the bad faith issue, unless I'm missing something, I think the bad faith issue goes to the admissibility of extrinsic evidence. But how does the extrinsic evidence help you? Well, I think it just, it helped below at least because there was a kind of a gross distortion of the nature of the injury. They were characterizing it as a broken ankle. Yes, to how serious it was in the first place. But it also reinforces and probably strengthens the role of the diabetes in the ultimate outcome. Well, I'm not so sure of that. And I'd like to try to address that. And that's where I think the burden of proof becomes serious here. The district court clearly thought it was our burden to prove that the diabetes, the effect of the diabetes was de minimis. It wasn't. It's their burden to prove that it was significant. Maybe we could just disagree with the district court's assumption that it needs to be de minimis. I mean, I'm not sure, what do you think the standard should be for whether the diabetes was a substantial contributor here? I think that brings up what I call the causation problem. And here's the problem. It's been around for a long time. But when you have a term that says any other cause can be an intervening cause, then the question becomes, pretty much anything can have a causal relationship. So it had to be a substantial contribution. So could your argument just be that the district court didn't understand how substantial a substantial contribution needed to be? Yes, I think that was a clear one. Substantial contribution, this is one thing that confused me, and it's sort of a follow on my first question. I understand that the case law, I mean, you did a very good job of demonstrating the case law in most states, at least, says that a substantial contribution on the front end. But what about in the exclusion? Does that also have to be a negation of a substantial contribution in the exclusion? I think in the exclusion, I think, yeah, I think it does. I think it has to be. They have to have some evidence. If they want that exclusion to apply, they have to come forward with some evidence. And you have some support for that in, I mean, this is either a question of importing this standard into federal common law, or it's part of a preemption argument that we can get into. But let's assume for the moment that we're talking about importing a standard into federal common law. Do we have case law now saying that it's a substantial factor standard? Yes, those are the cases I cited in the- But the Ninth Circuit happened. The Ninth Circuit is very shallow, and that's why I keep- And do the cases that you cited from other, from state jurisdictions, go both ways? That is, they apply both when the burden's on the plaintiff on coverage, and when the burden's on the insurer with respect to- Not really. If the burden is, if we're just looking at the insuring agreement, and not looking at the exclusion, then we're in standardized terms. The term that MetLife put into the policy has to be the sole and direct cause, independent of other causes. They didn't create that clause out of whole clause. All right, well, I've got the exclusion then. In other words, so let's suppose you're right, and let's suppose for current purposes that it wasn't a substantial factor. So you haven't shown, you can show coverage, but you still have to show, somebody still has to show that the exclusion doesn't apply. So how does that happen? Well, then the burden shifts to them. Okay, but what do they have to show? What they have to show is they have to show that the, in this case, the diabetes, the contribution of the diabetes to the loss of the leg was both substantial and direct. And that's what I was asking you. Is there support for the fact that in the exclusion context, the standard is still substantial? Yes. Yeah, those are the cases that I put in there, mostly in the reply brief, I think. I may be able to pull them up, but it's essentially, if you're going to, if they have a burden of proof on the exclusion, they've got to show substantial and direct, not indirect. The big problem they've got, I mean, there's no evidence of substantial. They could have asked, you know, there could have been some, we have Dr. Soufal's letter saying he was fighting the MRSA infections. And, you know, you get those infections in the hospital, you don't get them in your bathroom. So he got into the hospital with this horrible leg injury and he got an infection in the hospital, and that's an antibiotic-resistant staph infection. And that's very hard to fight in a healthy person. But the definitive language is when he said contributed to or complicated by diabetes. Correct. Right? That's, upon that sentence, the insurance company relied to show that there should be no coverage. Right. Is that enough, factually, to establish substantially contributed? No, no, because the question you need to ask is, well, to what extent did it contribute? Did it, it was, and, you know, if you asked Dr. Soufal, I don't know what he would have said, but what's conspicuously absent from the record here is any medical professional saying, in my opinion, but for the diabetes, we could have saved the leg. Nobody said that. Nobody said that the diabetes was already causing problems with the leg. It wasn't. Nobody's saying that the diabetes was symptomatic, even. All they're saying is that he had this and it made it harder to fight the infections that were introduced into his body by the accident, not just by the accident of the hospital. And so I'm a little confused about why you're focusing so much on the burden of proof, because it seems like you could be making a legal argument that just, there's no way this preexisting condition can ever be a big enough cause in this kind of situation for it to help the insurer, whichever, whoever has the burden. You're kind of buying into it matters if we get more medical testimony. I'm not sure why. No, that's a good point. All I was pointing out, and I was hoping to just kind of scoot through the burden of proof, because it seemed like such an obvious error to me to not even... But it only matters if it matters. You know, it's only worth talking about if it makes some difference. And I'm not quite sure I even understand how you think it does make a difference or why it should. I think that the district court was saying, hey, the burden is on the Dowdy's to prove that this policy covered them. We have this exclusion. They didn't overcome the exclusion, which is just flat-out error. That's just flat-out error. I don't know what the judge would have found if he had said, okay, it's met life's burden to show that this exclusion applies. I think that looking at this record, the judge would have had to have said, they haven't met their burden. So I think there would have been coverage, but we'll never know, because they introduced no evidence and the judge made an error. He put the burden on the wrong party. Do you want to reserve some time? Yes. Thank you. Did you have that? I have no idea where I am. Two foot here. Okay, I'll reserve the time. It should be over there. Thank you. Good afternoon, Your Honors. I'm Rebecca Hall. I represent the defendants and appellees in this action. I think essentially what we have here is an invitation to the court to overturn approximately 45 years of ERISA jurisprudence and to replace it with something that is completely contrary to the preemption statute and to all of the case law that has come before it under ERISA.  I'm just wondering if you could clarify that since the plaintiffs are the appellants are relying on case law that is as much as 100 plus years old, this is a body of jurisprudence that was known to Congress when it adopted the preemption statute and it was known to the Supreme Court when the Supreme Court elucidated what preemption means and what it extends to. I don't understand the relevance of that. It seems to me that either, as I said before, these cases at least illustrate what the federal common law is likely to be if it was the common law for 100 years otherwise and why wouldn't we incorporate that as federal common law? And that's one possibility. The other is to get into the preemption question, which I might want to do, but let's leave it. Let's start with the first one. All right. Well, I mean, the two, to my mind, go hand in hand, because if you look at Evans v. Safecode. Let me back up a minute. Are you arguing that it is not a substantial factor test? Is that what you're saying? Well, I think it is a substantial factor test in the sense that something that's, for instance, tangentially mentioned in medical records is not going to be something that plays into this kind of an analysis. However, in this particular case, the district court made a finding of fact that this was, in fact, a significantly contributing issue, that the diabetes was preventing the recovery from the injury. So how is it fair, if you think that's the right interpretation, diabetes always makes it harder for people to heal. How can you sell insurance to people with diabetes in good conscience if that's your policy? You should warn everyone that if you have diabetes, don't buy this policy, because it's never going to cover you for anything. Well, I, with all due respect, Your Honor, I don't think that's going to turn out to be correct. I think there are all sorts of conditions and infections and so on where a person might have diabetes and that wouldn't enter into it at all, or certainly not in any significant way. But that's not what we have here. What we have here is an explicit explanation from the treating doctor about the extent to which this caused problems. And what can he say exactly? Well, the district. There was a contributing factor or something along those lines? Complicated, a complicated matter. It was a complicated, all he said was it was complicated by diabetes. That's all that was before your client. And how does that actually establish, substantially contribute to the injury? I'm looking for the actual quote, Your Honor, I'm sorry. The district court did quote the doctor's letter and also quoted from the records that had been, in the district court's opinion, improperly submitted or were not admissible. The district court didn't rely upon those records. I thought he had rejected those records.   But really, he had to rely upon the only reference to diabetes, and that's from Dr. Cofill, I think. And he just said in that one sentence, the complicating nature of diabetes, right? Well, he talked about, for instance, due to the multiple comorbidities, which were including the diabetes, as well as non-healing wounds. It was selected. Well, isn't one of the comorbidities the infection, which that seemed to be the main one. He ended up developing deep infection in the right lower extremity, consistent with osteomyelitis and sequestrum, which was related to the original injury. Eventually, due to his comorbidities, as well as the type of injury, and the infection is specifically backed out here, right? That is not within the exclusion. I'm sorry, it's not within which exclusion? You've acknowledged you can't deny this coverage based on the infection. Well, there are two different questions about an infection. One is that there is an exclusion that deals broadly with infections. But then there is the separate, and it says which infections will or won't be excluded because they are infections. But then there is separate exclusion that deals with injury, excuse me, illness or other medical conditions. So you think you could exclude it because of the infection, even though it says you can't exclude it because of the infection? I'm confused. No, no. What we're saying is, I mean, the Dowdy's brought up the infection exclusion. I understand that. But all I'm pointing out is that in this very brief information in the record, he says that you're assuming that the comorbidities are the diabetes, but he, what he's really stressing here is the infections. That's not a comorbidity? No, that's in the nature of a symptom. The comorbidity, as I understand it, that's not a symptom, it's an actual infection. As I understand the term, Your Honor, the concept of a comorbidity is an underlying condition that contributes to a particular situation. So in this case, the comorbidity would be the diabetes. But it's plural. The other thing was the infection. Well, he also, the doctor's letter also refers to an osteomyelitis issue and some other situations. Isn't that an infection? Isn't osteomyelitis an infection? It's a type of infection. I don't think that it is necessarily what most people would think of as an infection. It's a condition in the bone, obviously. But diabetes is the central factor, is it not? Yes, I believe it is. So his language, this is the only language that the insurance company had upon which to make this determination. The language from Dr. Koffel, in quotes, that he had wound issues which were complicated by his diabetes. Correct. Right? From that, do you think it is fair that your client could determine that there's evidence of a substantial contribution on the part of diabetes toward the decision to sever his leg? Yes, I think so, because the way the doctor discusses it is this was a further issue. In other words, he went along for five plus months being treated for the leg injury. And then the diabetes kicked in with these other issues. So what if he's probably also affected by his age? If he's elderly, so he heals a little more slowly, and so it takes five months and they figure out he's never going to heal, would being elderly be another thing that would allow you to exclude coverage? I mean, there are a lot of things. My point is there are a lot of things that could contribute to how someone heals. Diabetes is one of them. His age is one of them. Maybe how well he's eating is one of them. And it seems like the very fact that the doctor said this is a contributor you're jumping to, it's a substantial contribution that excludes payment here. And I don't understand how you're getting to that jump. Because the actual language is an exclusion for physical or mental illness that caused or contributed to the loss. Diabetes is a physical illness. The doctor said this is... Let's go back to what I asked you before. So you seem to be saying, are you saying that the substantial factor test does not apply because it's not in the actual language? Is that what you're saying? No, I'm not saying that. I'm not saying that. What I'm saying is that the district court made a finding of fact that it was a substantial factor. And where is that, please? I don't remember if the district court used the particular... What he said was, there is no doubt that the infection caused by the injury sustained in Dr. Dowdy's car accident was a predominant reason for the amputation. But that is not the operative question. Defendant's policy dictates that the accident must be the direct and sole cause of the loss and that no other physical or mental illness caused or contributed. So he seems to be applying a sort of zero contribution test. He doesn't say anything. Where does he say anything about a substantial factor? As I said, I don't think that the court used that particular term. Well, you said before specifically that he did. You said he made the finding. Well, what the district court said at page 9 of the opinion was these statements, statements in the various records, explicitly link the presence of Mr. Dowdy's diabetes to the need to treat his infection with some more drastic remedy of amputation. And it seems to me... But where does that apply substantial factor? How do we know that the district court was thinking about this correctly in the correct legal framework? Because you've acknowledged that substantial contribution is the relevant test, and yet nowhere here does he make clear that he's thinking of it that way. Well, I think that, well, I would say that that comes from the fact that the district court's finding was, having reviewed the medical evidence available in the record, this is on page 10, the court concludes that Mr. Dowdy's diabetes caused or contributed to the need for amputation. While it is true that plaintiff's injury in the accident was serious and was described in the record as a near amputation, the actual loss at issue in plaintiff's claim is the surgical amputation that occurred on February 13, 2015, 5 months after the accident. The notes of Mr. Dowdy's orthopedic surgeon made clear that the amputation was completed to treat an aggressive infection, and that this decision was made at least in part due to the impact of Mr. Dowdy's diabetes. But that's the opposite of substantial factor. It just says, do at least in part. It doesn't say what part. And you still haven't really answered me as to whether you accept the substantial factor. I'm confused about, I mean, you began by saying that we ought to — maybe you were saying that we shouldn't be looking at the State law cases. So what should we — what is the standard that we're applying? Well, the standard that we're applying is the standard that applies under ERISA, which is you look at the plan document, you see what that says, the court applies legal conclusions in terms of what does it mean, and in this particular case, since it was sitting as the trier of fact, it also makes factual decisions. So do we or don't we look at the fact that there have been 100 years' worth of cases in the State saying what the same language means? Do we look at that or not? I don't — no, I don't think so. And the reason is — So what do we look at? So you're saying the substantial factor test doesn't apply? Not if we're talking about importing wholesale State law concepts. All right. So what is the standard, then? The standard is what the district courts and the courts of appeal and the Supreme Court have said is that you look at the language of the plan and you apply it as written. As to this particular provision, what is the standard of causation? Is it de minimis? Is it any — any contribution? Is it a significant contribution? Is it a substantial contribution? What is it? I don't — I am not aware of case law on this kind of case in this — All right. But we're at the court. We have to decide. What is the standard? I think the court has to apply the language as written. I mean, that's really the best I can say, because — How about McClure? Doesn't McClure give some direction that you use the substantial factor? Isn't that the test that comes out of McClure? That is one of them, Your Honor. Another one is proximate cause, right, which would be harder for you, correct? Well, no, I don't think — I don't think it's harder, because what we have here is plan language that says caused or contributed, and sole and — sole and direct. Direct is proximate cause. Sole is a completely different issue. That's exactly what the Dowdys are fighting about here, is the plan language says direct and sole cause, and it is not a sole cause. That's what the district court found. The district court found that it accepted the treating doctor's analysis and said it's not the sole cause. It is fair, then, that you are rejecting the substantial contributing factor. You are rejecting the McClure standard, and you're basically using the literal language of the provision to say if there's any de minimis contribution from any particular other factor, in this case diabetes, then there's no coverage. No, Your Honor. I'm not rejecting McClure. I'm saying that this is a — I think it's an area that has not been fully developed. And so what do you think the standard is for how much it needs to contribute for you to win this case, the diabetes to contribute? How much does it need to contribute? I think it needs to contribute to the need for — for the amputation, and I think that that is exactly what the doctor said. So it needs to contribute at all. So if it contributes .001 percent to the need for the amputation, that's enough on your reading, and that's what you want us to hold here? No, I think it needs — it needs to be a significant factor, but that is, in fact, what we have here. Well — If that is the test, it's met by these facts. Just to ask you the ultimate question, I'll read to you. He had — he had wound issues which were complicated by the diabetes. That is all that the plant administrator had, complicated by the diabetes. Is that enough to establish substantially contributes? Or significant factor that you just said? Well, that particular provision, Your Honor, does go on to explain what the doctor was talking about. It's quoted at page 10 of the district court's opinion. It says, he, Mr. Dowdy, had wound issues which were complicated by his diabetes. The wound healing, as well as his fracture itself, was slow to heal and never had any significant healing, in spite of being stabilized with the external fixator. He ended up developing deep infection in the right lower extremity, consistent with osteomyelitis and sequestrum, which was related to the original injury. Eventually, due to his comorbidities, as well as the type of injury, he ended up proceeding to an amputation. And you're relying upon diabetes, and there is no linkage to diabetes in those later descriptions of what happened to him. Well, respectfully, Your Honor... The only reference to diabetes in his contribution is in that one half of a sentence. That's all that Dr. Cofill talked about. And that is the document upon which you rely to deny coverage. That is, in fact, I think, the clear import of what his doctor was saying. His doctor wasn't saying, oh, by the way, he had diabetes, and then these other things happened. The doctor is clearly linking them together. But all it means is it's a part of the cause. And you seem to not be willing to say being a tiny cause is enough. You're saying that it needs to be something more. But then how do we know that this means it's something more than a tiny cause? Well, I guess we come back to the same thing, which is that the district court made a finding of fact based on this record. Excuse me. The district court never said it was a significant factor or a substantial factor. And the material that you read before was from the external evidence that he specifically did not rely on. So and moreover, McClure says substantial factor is substantially contributed to the standard. So why are you saying that that isn't the standard? Well, Your Honor, with respect, what I read a few moments ago about the complication of diabetes at the bottom of page 10 is from the administrative record. No, I said you said that the district judge made a finding that there was a substantial factor. I still have not found or even significant factor. I didn't find either one in that order. Well, what I'm saying is that I believe that that is exactly what the district court found, because if you look at the top of page 11 of the opinion, where, again, the district court is quoting from the administrative record. No, he's quoting from the material that's not in the administrative record. Page 11 of the opinion. I'm sorry. Go ahead. Right. I'm sorry. He goes on to say, under plaintiff's insurance policy, it therefore appears that plaintiff's diabetes caused or contributed to his need for amputation. Indeed, Dr. Kufel explicitly states that the wound issues leading to the amputation were complicated by his diabetes and due to his comorbidities. I think that is exactly what the district court is saying here, is that the district court didn't, I don't think, come to a conclusion that these two things existed in the same universe or in the same person's body, but were unrelated. That's not what the district court was saying. I think the district court was saying exactly that that was, in fact, a significant cause. One last question, and then your time is up. In terms of the standard of review here, I assume the standard of review. Yes. This has always been kind of hairy in the ERISA plan context, because the – now, I gather there is a – an agreement that this is not abuse of discretion review. Correct. It was a general rule. Now, when we review the district court, I assume that since it's on a cold record, we don't do clear error review. Is that right? No. In fact, this Court does do a review for clear error because it is, in fact, a – the district court sitting as the finder of fact. But on a cold record, the same record we're reviewing. Right. But the district court is, by the nature of a de novo review, resolving conflicts, making credibility determinations, and doing all the things that it would do if it had live witnesses in front of it. So, in fact – So if we think the district court applied the wrong standard or defined substantial contribution incorrectly, would we need to remand? Possibly. It depends on – it depends on this Court's analysis. But the district – So we couldn't apply that standard. If we further articulate the standard, we couldn't apply it ourselves, we'd have to – would we have to remand? I don't know if I can answer that in a vacuum, because what I'm saying is there were a number of factual findings that the district court made. Applying a different standard to those findings, I don't know the answer, because I don't know how this is going to play out. But – Can I ask another question? Has this case ever gone to mediation? Yes, it did. And when was that? Here in this Court? I don't – I don't believe it happened in this Court. I think it happened at the district court level only. So we have great mediators here. Would it be fruitful for this case to mediate? I don't know. I certainly would never say no, and I'm sure my client would not say no. Okay. What we would do if we did that is we would refer to the mediators, really for an initial phone call with both parties to see whether mediation would be fruitful, and then – you don't have any obligation to continue with it, but there would be an initial – I appreciate that, Your Honor. Thank you very much. Thank you. I think I – I think I can be very brief. The standard review under Metropolitan Life Insurance Company v. Parker is de novo up here. I don't think that – I'm sorry? It's de novo review up here. There's no deference to the trial courts. What about fact findings, though? Don't fact findings get reviewed for clear error? But they're on a – you have the exact same record that the district court has. So do you have a cite for that? I thought that – and I haven't looked at it because I didn't anticipate this coming up, but I thought that the Metropolitan Life Insurance Company case that we cite on page 21 did that. I'm not entirely sure. I have to go back and look. The problem, of course, with ERISA cases is that the depth of coverage law in the federal common law is very shallow compared to the enormous body of common law out there, and that's why in Saltarelli – I always mispronounce that – it says that you draw freely from the common law. Metro Life says we review district court findings fact for clear error. Okay. Okay. Then I stand corrected. I'm sorry. I just come back always to the Firestone admonition that you can't put the beneficiaries under a worse position than they would have been in had ERISA never been enacted. You can't adopt construction of insurance policies that do that. Let me ask one other question. You, to some degree, want to take on McClure after the Miller case and Uniman say that, in fact, that this whole question comes within the insurance exception to ERISA preemption. Right. Yes. Do you want to elaborate on that at all? Yes. I think we've done about as well as we can do in the briefing on that. I think that McClure is vulnerable now because of the subsequent decisions that suggest that the court, as I think it should, looks harder to common law, and it's partly to fulfill the Firestone standard. There's no way these guys – Well, McClure is consistent with the common law, and then it does use a substantial factor test. Yeah. The big tangle I have with McClure is it's – But I gather that you would say, under the common law, that it's actually approximate cause checks. Yes. Yes. Yeah. Right. Yeah. Direct and sole, independent of other causes, is interpreted throughout the land. What about the exclusion? Exclusion has to be substantial and direct. So it doesn't have to be approximate cause. The – there are two different issues. One is the insuring agreement, and the other is the exclusion. Right. With the insuring agreement, the direct and sole, independent of other causes, is universally – except in this circuit – deemed to be approximate cause or efficient. Right. But – In other words, if you follow the principle that you just argued just a second ago, that you – a beneficiary should not be harmed by the application of a RESA. They should – their reduction – their benefits should not be less. You're essentially saying that when federal common law conflicts with state common law, state common law broadens the protection for beneficiaries, then federal common law becomes secondary and is essentially outweighed by common law so that you have a greater benefit for the beneficiary? I didn't mean to put it that way. The way I meant to put it – No. I know you didn't put it that way. It was just the logical conclusion from what you said about making sure that beneficiaries are not harmed by a RESA in comparison to the benefits they've received in state court. Okay. I think I'm following that, and I think that's right. The concern I have is that federal common law under RESA is very shallow still. It's very deep out there in the – Well, if you assume federal common law talks about substantial, and the state law, in fact, would be proximate cause, which is a much more pro-plaintiff standard, what you're suggesting under your logical conclusion that people – beneficiaries should get the most benefit from the plan, you'd apply the state common law. Yeah. Yes, I would, because otherwise you're putting – you're making much worse off. Well, that does mean supervening McClure, and the only possible basis that you have for supervening McClure is whether it really isn't even preempted anymore because of the later cases. In other words, otherwise, there's no basis for us to be taking on McClure as to whether it's substantial factor or proximate cause. I think that's correct. But let me just ask you one more thing, and then you're done. My understanding of what you're saying just specifically is that if for some reason we were just to decide or a bank court was to decide, someone was to decide, that the proximate cause front end – what I'm calling front end, that is coverage standard – really is not even exactly an interpretation. It's more like the notice prejudice requirement in UNAM and therefore is within the insurance exception and applies. But then we still have the exclusion. If we get to the exclusion, you seem to be saying that at that juncture, the substantial factor test does apply except the burdens on the insurer. Correct. Yes, I think that's right. So we're still at the substantial – so the front end only matters with regard to where the burden is because you're still applying a substantial factor test, but you would argue with the burden on the insurer. Is that – so I understand your argument. I think that's correct, yes. Okay. Thank you very much. And what's your position on whether mediation would be fruitful? We've been – let's see, we were at a mediation at the lower level, at the district court level, went nowhere, happy to participate. I never turned that down. We just haven't made any progress at all, so. Okay. Thank you both very much. Thank you for your arguments. The case of Dowdy v. Metropolitan Life Insurance has submitted.
judges: Berzon, Friedland, Sessions